**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COTTON USA, L.P.<br>14345 Northwest Freeway<br>Houston, Texas 77040<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>GREATER SOUTHEAST COMMUNITY<br>HOSPITAL CORPORATION I<br>1310 Southern Avenue<br>Washington, D.C. 20032<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff COTTON USA, L.P. ("Cotton" or "Plaintiff") files this Original Complaint against Defendant GREATER SOUTHEAST COMMUNITY HOSPITAL CORPORATION I ("Greater Southeast Hospital" or the "Defendant"), and in support of which, Plaintiff respectfully shows the following:

### I. JURISDICTION AND VENUE

1.　　Plaintiff, Cotton USA, L.P. is, and was at all times mentioned, a limited partnership duly organized and existing under the laws of the State of Texas with its principal place of business at 14345 Northwest Freeway, Houston, Texas 77040. Cotton is authorized to do business in the District of Columbia.

2.　　Defendant, Greater SE Community Hospital Corporation I, was, and is now, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 1310 Southern Ave., Washington, D.C. 20032. Defendant, which

does business in the District of Columbia, may be served by serving its registered agent, CT Corporation System, 1015 15th Street, N.W., Washington, D.C. 20005, or person conducting the business of Defendant at its principal place of business, 1310 Southern Ave., Washington, D.C. 20032.

3.       The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

4.       Every issue of law and fact is wholly between business entities duly organized under the laws of different states and with their principal places of business in different states.

5.       Pursuant to Section 8.2 of the Restoration Services Agreement and Construction Contract (the "Agreements"), Cotton and Greater Southeast Hospital, as owner of the commercial property located at 1310 Southern Ave., Washington, D.C. 20032 (the "Property"), agreed "to the exercise of jurisdiction over it by a state or federal court in the County in which the work [was] performed..."  True and Correct copies of the Agreements are attached hereto as Exhibits "A" and "B".

6.       All work completed under the Contract was performed in the District of Columbia.

## II. APPLICABLE LAW

7.       Pursuant to Section 8.1 of the Agreements, the laws of the State of Texas govern any dispute arising between the Parties related to the Agreements.

## III. FACTS

8.       Plaintiff is engaged in the business of emergency fire and water damage restoration.

9.       Defendant owns the Property, which it operates as a medical facility.

10.     Defendant employed Plaintiff via the signed Agreements to provide various restoration and construction services at the Property.

11.     Pursuant to the Agreements, Defendant contracted, among other things, to fully and timely remit payment to Plaintiff for materials and services provided within 30 days from the date the Invoices are presented by Plaintiff to Defendant, pay late fees in the amount of 1.5% of the total amount due and owing after such thirty (30) day period has expired and Defendant agreed that the Agreements shall be construed in accordance with the laws of the State of Texas without giving effect to conflict of laws.

12.     As evidenced by the Invoices, Plaintiff completed various restoration and construction services on or about June 16, 2007.   The services Plaintiff rendered have an aggregate value of $298,303.98.   At this time, Defendant has remitted payment for only $100,000.00 of the $298,303.98, leaving a balance of $198,303.98 (the "Outstanding Balance"). Such Outstanding Balance is still due and owing to Plaintiff.

13.     Despite Plaintiff's demand made upon Defendant on October 22, 2007, as well as other efforts to obtain payment for the Outstanding Balance, Defendant has defaulted in paying this debt by not remitting payment to Plaintiff.

14.     Defendant's default has made it necessary for Plaintiff to employ the undersigned attorney to file suit.

## CAUSES OF ACTION

### A.     BREACH OF CONTRACT

15.     Plaintiff reiterates and adopts each and every statement and allegation of the aforementioned paragraphs as if set forth herein verbatim.

16.    Defendant materially breached its contracts by failing to comply with the terms in the Agreements and failing to make payment for the services rendered by Plaintiff as required by the Agreements.   As a result, Plaintiff has suffered an injury that is the natural, probable, and foreseeable consequence of the Defendant's breach.

17.    Plaintiff has performed in compliance with the Parties' Agreements.

18.    All conditions precedent have been performed by Plaintiff or have occurred.

## B.  QUANTUM MERUIT

19.    Plaintiff reiterates and adopts each and every statement and allegation of the aforementioned paragraphs as if set forth herein verbatim.

20.    In the alternative, if this Court determines that a valid and enforceable contract does not exist between the Parties, then Plaintiff seeks recovery under the doctrine of quantum meruit.

21.    To recover under the doctrine of quantum meruit, evidence must be presented to the Court demonstrating that services were rendered to Defendant, and that Defendant knowingly and voluntarily accepted these services.

22.    Defendant was provided construction services and the necessary materials to complete these services.   Defendant knowingly and voluntarily accepted all services and materials provided to it.   Based on its knowledge of the Parties' Agreements and the receipt of the Invoices for these services and materials, Defendant was aware that Plaintiff expected payment for any services it rendered.

## DAMAGES

23.    Plaintiff reiterates and adopts each and every statement and allegation of the aforementioned paragraphs as if set forth herein verbatim.

24.    As a result of Defendant's material breach of the Parties' Agreements, Plaintiff has suffered damages in the form of the unpaid indebtedness in an aggregate amount within the jurisdictional limits of this Court.

25.    Plaintiff is entitled to recover its reasonable attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001, *et seq.*  Plaintiff's claim is based on a contract.  Plaintiff is represented by counsel.  Plaintiff's claim has been presented to Defendant, and payment of Plaintiff's claim was not tendered within 30 days of the date Plaintiff presented its claim to Defendant.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Cotton USA, L.P., respectfully requests that Defendant, Greater Southeast Community Hospital Corporation I, be cited to appear, and that Plaintiff have judgment against Defendant for:

    a.    Actual damages of no less than $198,303.98;

    b.    Reasonable and necessary attorneys' fees as provided for by governing Texas law;

    c.    Pre-judgment interest at the maximum rate of interest permitted by law;

    d.    Costs of suit;

    e.    Post-judgment interest, at the maximum rate of interest permitted by law; and

    f.    Any other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

SHUMAKER WILLIAMS, P.C.

By:

Harry Levy (D.C. Bar No. 389060)
40 West Chesapeake Avenue
Suite 605
Towson, Maryland 21201
(410) 825-5223
(410) 825-5426 (facsimile)
E-mail:  levy@shumakerwilliams.com

ATTORNEY FOR PLANITIFF
COTTON USA, L.P.

Date:  December 21, 2007

:206373

# EXHIBIT "A"





COTTON USA
National Disaster Recovery Services

RESTORATION SERVICE AGREEMENT

EFFECTIVE DATE OF AGREEMENT: _5-18 - 2007_
CUSTOMER: _GREATER SE HOSPITAL_
BILLING ADDRESS: _1310 SOUTHERN AVE, WASHINGTON, DC 20032_
INSURANCE COMPANY: _ST. PAUL TRAVELLERS_  CLAIM NO. _____
PROPERTY ADDRESS ("Property"): _(SAME AS ABOVE)_
TYPE OF LOSS (Fire/Water/Other): _WATER_

Cotton Commercial USA, L.P. d/b/a Cotton USA ("Cotton"), a Texas limited partnership, and the Customer agrees as follows:

ARTICLE I.
CONTENTS OF AGREEMENT AND ASSIGNABILITY

**Section 1.1 Nature of Agreement.** This Agreement is a contract for restoration services between Cotton and the Customer, with the scope of services ("Work") to be provided as described in the written estimate ("Estimate") that will be provided by Cotton to the Customer and Customer's Insurance Company. This Agreement, the Estimate and all addenda issued prior to and all modifications issued after execution of this Agreement, constitute the entire agreement between Cotton and the Customer. The Customer shall not assign this Agreement without the prior written consent of Cotton. Cotton shall provide to the Customer certificate(s) of insurance upon request.

ARTICLE II.
DUTIES, COOPERATION AND AUTHORIZATION

**Section 2.1 Services and Materials Provided.** Cotton agrees to furnish all labor, supervision, materials, equipment, tools, supplies, subcontract work and services, which in Cotton's sole discretion is reasonably necessary to timely and fully perform and complete the Work in a good and workmanlike manner.

**Section 2.2 Cooperation By Customer / Term of Agreement.** The Customer agrees to cooperate with Cotton in the performance of the Work, and such duty shall last until completion of the Work, and the Customer agrees to fully cooperate with Cotton as is reasonably required by Cotton for completion of the Work.

**Sect ___ Removal of Contents.** The Customer authorizes Cotton to remove contents and non-fixture parts of the building as necessary in accordance with the scope of work for the purposes of safekeeping, inventory, testing and/or appraisal of damages, cleaning of contents offsite, and such other purposes reasonably related to completing the Work. However, Cotton requires Customer (or Customer's tenant) to remove and secure all valuables and fragile items.

**Section 2.4 Subcontractors Allowed.** As Cotton is the independent general contractor, Cotton has exclusive authority to sub-contract and to utilize other contractors, as it deems necessary for completion of the Work. The Customer is hereby obligated to allow Cotton to sub-contract and/or to utilize other contractors, as it deems necessary for completion of the Work.

**Section 2.5 Insurance.** Cotton shall provide to the Customer certificate(s) of insurance upon request.

**Section 2.6 Permits.** Any federal, state or local permits or consents required for the performance of the Work are the responsibility of the Customer (notwithstanding Cotton assistance of Customer in obtaining same) and Customer shall bear all costs related to same.

**Section 2.7 Hazardous Materials.** Disposal of any Hazardous Materials (including specimens or samples) or any property that contains Hazardous Materials performed as a part of the Work will be made in the name of the Customer and under any applicable generator number or other identification assigned by the Customer or the applicable governmental authority.

**Section 2.8 Authority of Customer.** The Customer and the person signing below ("Signing Party") on behalf of Customer hereby represent and warrant that one of the following is true: (i) Customer is the absolute fee simple owner of the real property (the "Property") upon which the Work is to be performed and the Signing Party is an officer of Customer who is duly authorized to execute this Agreement on Customer's behalf and to bind Customer under the terms of this Agreement or (ii) Customer is the agent of the absolute fee simple owner of the Property, whose identity and contact information will be disclosed to Cotton upon Customer's request for same, under a written property management agreement (or other written instrument) that will be provided to Cotton for inspection upon Cotton's request for same, and the Signing Party is an officer of Customer who is duly authorized to execute this Agreement on Customer's (and the absolute fee simple owner's) behalf and to bind Customer (and the absolute fee simple owner) under the terms of this Agreement.

ARTICLE III.
TIME FOR PERFORMANCE OF WORK

**Section 3.1 Work Performed.** The Work shall be commenced within forty-eight (48) hours (or as reasonably practical given the specifications of the Work) following execution of this Agreement, and Cotton shall use reasonable efforts to substantially or fully complete the Work within a reasonable amount of time after beginning the Work. Should Cotton be delayed, hindered, interfered with or impeded by any act or omission of the Customer, or by any causes beyond Cotton's control, and if a cause of the delay, hindrance, interference or impediment is not due to any act or omission of Cotton, then Cotton shall be entitled to a reasonable extension of time for completion of the Work.

ARTICLE IV.
CUSTOMER'S PAYMENT OF FEES AND COSTS

**Secti ___ .1 Pricing and Invoicing.** All work performed hereunder shall be priced at:

_____  Lump Sum Amount (See Estimate)

OR

_✓___  Time and Materials (See Rate Schedule)

The Customer shall pay Cotton an initial deposit of $ _____ as a condition to Cotton beginning performance of the Work contemplated by this Agreement. After the Work is begun, the Customer will receive progressive billings ("Invoice") for the Work performed for Customer lasting one month or more, unless more frequent billing is appropriate as determined in Cotton's sole discretion. All fees and costs ("Charges") as reflected on the Invoice shall be due fifteen (15) days after the date of the Invoice. There will be a service charge on all or any portion of the Charges reflected on the Invoice, which are not paid within thirty (30) days of the Invoice date ("Delinquency"), which shall be the sum of 1.5% of the Delinquency for each month (i.e. thirty days) the payment is delinquent. Prior to the delivery of the Customer's property and contents (i.e., items removed from the dwelling/building), Cotton shall submit to the Customer the final Invoice; provided, however, that delivery of such property and contents shall not be made until Cotton has received payment on such final Invoice and Customer has paid in full all previous Invoices (and any services charge accrued thereon) and there remains no Delinquency. The Customer agrees to pay Cotton in full for all Charges upon the receipt of an Invoice and agrees to be legally responsible for such payment regardless of whether the Customer is entitled to coverage or reimbursement from its insurance carrier or any third party. The cumulative sum of all Charges incurred by the Customer hereunder shall be considered the "Contract Price".

**Secti ___ Change Orders.** Any modifications or change orders with respect to this Agreement shall be agreed to in writing by Cotton and the Customer and shall take effect upon execution of such modification or change order by Cotton and the Customer.

**Section 4.3 Direct Pay Authorization.** This Agreement shall serve as Customer's consent to its property and casualty insurance carrier to pay Cotton directly with respect to any amounts claimed by the Customer under any insurance policy covering the property that is the subject of this Work.

1

ARTICLE V.
MOLD REMEDIATION WORK; INDEMNIFICATION

Section 5.1   Mold Remediation Work. With respect to any portion of the Work to be performed by Cotton that involves the remediation of mold ("Mold Remediation Work"), Customer agrees as follows:

(a) Testing. Customer shall engage the services of a person or firm ("Mold Expert") specializing in the investigation, testing and analysis of mold spores and microbial contamination ("Mold") occurring within buildings and other structures of a like-kind and nature as the project site and shall have the Mold Expert test the Site for microbial contamination prior to commencement of the Mold Remediation Work. The scope of the Mold Remediation Work will be specified in a mold analysis report ("Report") that the Customer receives from the Mold Expert. The Customer shall be solely responsible for having the Mold Expert test ("Pretest") the Property for Mold prior to commencement of the Work and preparing the Report. In performance of the Mold Remediation Work, Cotton will not be required to perform any testing or analysis of the site. Cotton will perform the Mold Remediation Work to substantial completion in keeping with the specifications of the Report, and after notice by Cotton to Customer of substantial completion of the Mold Remediation Work (or portion/phase thereof), Customer shall cause the Mold Expert to again test ("Post-test") the site (or portion/phase thereof).

(b) Work Completion. Customer acknowledges that mold spores are naturally occurring substances and that after the Mold Remediation Work is substantially complete, the site may still contain traces of Mold or other microbial elements. Notwithstanding, once the Mold Expert completes the Post-test and provides Customer with a statement that the Mold at the site (or portion/phase of the site tested) has been remediated to within acceptable industry standards or limits, Cotton's Mold Remediation Work shall be deemed fully complete as to the site (or portion/phase of the site tested), and going forward, Customer assumes all risks as to the site (or portion/phase of the site tested) with respect to the presence of Mold and other microbial elements, and Cotton will have no further obligation or liability to Customer with respect to the Mold Remediation Work at the site (or portion/phase of the site tested). In the event that a Post-test is not performed at the site (or any portion/phase thereof), the Mold Remediation Work shall be deemed fully complete as to the site (or portion/phase thereof) at such time that Cotton notifies Customer of substantial completion of the Mold Remediation Work.

Section 5.2   Release. CUSTOMER HEREBY RELEASES AND AGREES TO HOLD HARMLESS COTTON, ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, AND AGENTS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, DAMAGES, CAUSES OF ACTION, SUITS, JUDGMENTS, AWARDS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND LIABILITIES OF EVERY KIND OR CHARACTER (COLLECTIVELY REFERRED TO AS "DAMAGES"), IN RESPECT TO PERSONAL OR BODILY INJURY TO, SICKNESS, DISEASE, DEATH OR OTHER DAMAGES SUFFERED OR INCURRED BY CUSTOMER AND/OR THE CUSTOMER'S EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS OR AGENTS OR THOSE OF ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES RESULTING OR ARISING FROM OR ARISING OUT OF OR IN CONNECTION WITH THE WORK DONE BY COTTON, UNLESS THE DAMAGES RESULT FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF COTTON. IT IS THE INTENT OF BOTH COTTON AND CUSTOMER THAT THE FOREGOING INDEMNITY PROVISIONS WILL OPERATE WITHOUT REGARD TO ANY LEGAL THEORY OF NEGLIGENCE OR FAULT, INCLUDING BUT NOT LIMITED TO JOINT AND/OR CONCURRENT NEGLIGENCE OF THE INDEMNITEE.

Section 5.3   No Consequential Damages. Customer agrees that under no circumstances shall Cotton be liable to the Customer for incidental, consequential or special damages including but not limited to lost revenue, lost profits, lost business, business interruptions, lost business opportunities or any other special, punitive, exemplary or consequential damages.

ARTICLE VI.
TERMINATION

Section 6.1   Termination By Cotton. Cotton has the right to terminate the Agreement at any time and to be paid the reasonable value of the Work thus far performed.

Section 6.2   Termination By Customer. In the event the Customer terminates the Agreement, the Customer shall be legally responsible to pay Cotton the full for all Charges up to and including the date of such termination, regardless of whether Customer has received an invoice for such Charges prior to such termination.

ARTICLE VII
DISPUTE RESOLUTION

Section 7.1   Non-binding Mediation. Any controversy, dispute or claim arising out of this Agreement or the Work done hereunder (which can not be amicably resolved by senior management representatives of Cotton and the Customer), shall first be submitted to non-binding mediation. Both parties shall share equally in the expense of such mediation in which a non-interested mediator shall serve to facilitate the resolution of the dispute. If such controversy, dispute or claim can not be settled or resolved by non-binding mediation, either party may then submit such dispute for resolution by binding arbitration in accordance with the terms of this Article VII, provided, however, that in circumstances where equitable (non-monetary) relief is sought, such dispute may be submitted to a court of competent jurisdiction sitting in equity who may issue injunctive relief or other equitable remedy.

Section 7.2   Attorneys' Fees and Costs. If any legal action or other legal proceeding relating to the enforcement of any provision of this Agreement is brought against either party, including arbitration, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party may be entitled).

ARTICLE VIII.
GOVERNING LAW; VENUE

Section 8.1   Jurisdiction. This Agreement shall be construed in accordance with the laws of the State of Texas, without giving effect to conflict of laws.

Section 8.2   Venue. In any legal action relating to this Agreement, the Customer agrees (a) to the exercise of jurisdiction over it by a state or federal court in the County in which the work is performed; provided, however, that the requirement to arbitrate all controversies, disputes and claims arising under this Agreement supersedes the provisions of this paragraph.

| COTTON: | CUSTOMER: |
| --- | --- |
| By: _Bud Lintelman_ | By: _Curt Allen_ |
| Name: BUD LINTELMAN | Name: Curt Allen |
| Title: REGIONAL DIRECTOR | Title: CEO |
| Date Signed: 5-18-07 | Date Signed: 5/18/07 |

Commercial Restoration Services - USA (Rev. 6-2005)

2

# EXHIBIT "B"



COTTON USA
National Disaster Recovery Services

CONSTRUCTION CONTRACT

NOTE:    COTTON IS A GENERAL CONTRACTOR TO OWNER ON THIS JOB

EFFECTIVE DATE:    *5-25-07*

OWNER (whether one or more):    *GREATER SE HOSPITAL*
*1310 SOUTHERN AVE, SE*
*WASHINGTON, DC 20032*

ARCHITECT (IF ANY):

PLANS & SPECIFICATIONS:    See Exhibit "A" attached

PROJECT DESCRIPTION:    *WATER LOSS*

PROPERTY ADDRESS:    *(SAME AS ABOVE)*

Cotton Commercial USA, L.P. d/b/a Cotton USA ("Cotton"), a Texas limited partnership, and Owner agree as set forth below.

ARTICLE I
THE CONTRACT DOCUMENTS

**Section 1.1** Contract Documents. The "Contract Documents" consist of this Construction Contract (the "Contract"), and the conditions hereto, general, supplementary and other, if any, the plans and specifications identified in Exhibit "A", and all addenda issued prior to and all modifications issued after execution of this Contract and agreed upon by the parties to this Contract. All such instruments and documents form this Contract, and are as fully a part of this Contract as if set forth in full herein.

ARTICLE II
THE WORK

**Section 2.1** Contract Work. Cotton agrees to furnish all labor, supervision, materials, fixtures, equipment, tools, supplies, other property and services necessary to timely and fully perform and complete in a neat, first class, good and workmanlike manner and in strict compliance with the Contract Documents, as applicable to this Contract, all of the work and services (the "Contract Work") described in Exhibit "A", attached. The Contract Work is part of the total work, and Cotton acknowledges that the Contract Documents as a whole are applicable to the Contract Work. In the event of conflict between the Contract Documents and this Contract, the provisions of this Contract shall govern.

**Section 2.2** Project. The term "Project" as used herein shall mean and refer to the project generally identified above.

**Section 2.3** Authority of Customer. The Customer and the person signing below ("Signing Party") on behalf of Customer hereby represent and warrant that one of the following is true: (i) Customer is the absolute fee simple owner of the real property (the "Property") upon which the Work is to be performed and the Signing Party is an officer of Customer who is duly authorized to execute this Agreement on Customer's behalf and to bind Customer under the terms of this Agreement or (ii) Customer is the agent of the absolute fee simple owner of the Property, whose identity and contact information will be disclosed to Cotton upon Cotton's request for same, under a written property management agreement (or other written instrument) that will be provided to Cotton for inspection upon Cotton's request for same, and the Signing Party is an officer of Customer who is duly authorized to execute this Agreement on Customer's (and the absolute fee simple owner's) behalf and to bind Customer (and the absolute fee simple owner) under the terms of this Agreement.

ARTICLE III
THE CONTRACT PRICE

**Section 3.1** Contract Price. Owner agrees to pay Cotton in accordance with the terms and conditions contained herein, the sum (the "Contract Price") of $ *140,393.96* subject to additions, deductions and conditions as stated herein, to be paid as follows:

Initial Deposit:    $ *70,000* *(WITHIN 7 WORKING DAYS OF COMMENCEMENT OF RE-BUILD)* *Dues*

Incremental Payments:    The Remainder of the Contract Price shall be paid in one-third (1/3") increments, with each increment being due and payable upon completion of (1) 33.33% of the Work, (2) 66.67% of the Work, and (3) final completion of all Work. All retainage that is withheld by Owner under the terms of this Agreement shall be paid to Cotton within 30 days after final completion of all Work.

**Section 3.2** Payment. Owner shall pay Cotton monthly progress payments in accordance with the provisions hereof. Applications for monthly progress payments shall be in a written application for payment and shall be submitted directly to Owner or Owner's designated representative, which application when submitted shall state the estimated percentage of the Contract Work that has been satisfactorily completed. Owner shall pay Cotton monthly progress payments within five (5) days of Owner's receipt of such application for payment submitted by Cotton for the Contract Work, subject to the other provisions of this Contract. Cotton has submitted, concurrently with the execution hereof, the schedules of values of the various portions of the Contract Work, which shall be used only as a basis for the applications for payment submitted by Cotton.

**Section 3.3** Retainage. All payments made by Owner to Cotton will be subject to a retention by Owner in the amount of five percent (5%) of the amount of each progress payment (or in such percentage as required by applicable law), as required retainage, until Owner pays Cotton its final payment, subject however, to all other provisions of this Contract.

**Section 3.4** Trust Funds. All sums tentatively earned by Cotton and retained by Owner by reason of the partial or complete performance of the Contract Work and any balance of unearned Contract funds, and all retainage shall constitute a trust fund for the purposes of (a) first, full completion of the Contract Work, (b) second, payment of any or all sums due Cotton from Owner, (c) third, payment to sub-Contractors, laborers and suppliers of Cotton who have valid and enforceable mechanics lien claims or bond claims (if the Project is bonded), and such tentative earnings shall not be due and payable to Cotton, or anyone else claiming to Cotton's place and stead, excepting however a trustee in bankruptcy that has given notice to Cotton that it will perform the Contract Work in accordance with the Contract provisions and cure any existing defaults, until and unless such Contract Work is fully and satisfactorily completed and such claimants are fully paid and satisfied.

**Section 3.5** Late Payments. There will be a service charge on all or any portion of the Charges reflected on the Invoice, which are not paid within thirty (30) days of the Invoice date ("Delinquency"), which shall be the sum of 1.5% of the Delinquency for each month (i.e., thirty days) the payment is delinquent. Prior to the delivery of the Owner's property and contents (i.e., items removed from the dwelling/building), Cotton shall submit to the Owner the final Invoice; provided, however, that delivery of such property and contents shall not be made until Cotton has received payment on such final Invoice and Owner has paid all of its previous Invoices (and any services charges) and there remains no Delinquency. The Owner agrees to pay Cotton in full for all Charges upon the receipt of an Invoice and agrees to be legally responsible for such payment regardless of whether the Owner is entitled to coverage or reimbursement from its insurance carrier or any third party. The cumulative sum of all Charges incurred by the Owner hereunder shall be considered the "Contract Price".

**Section 3.6** Change Orders. Any modifications or change orders with respect to this Agreement shall be agreed to in writing by Cotton and the Owner and shall take effect upon execution of such modification or change order by Cotton and the Owner.

1

ARTICLE IV.
DUTIES, COOPERATION AND AUTHORIZATION

**Section 4.1** Services and Materials Provided. Cotton agrees to furnish all labor, supervision, materials, equipment, tools, supplies, subcontract work and services, which in Cotton's sole discretion is reasonably necessary to timely and fully perform and complete the Work in a good and workmanlike manner.

**Section 4.2** Cooperation By Owner / Term of Agreement. The Owner agrees to cooperate with Cotton in the performance of the Work, and such duty shall last until completion of the Work, and the Owner agrees to fully cooperate with Cotton as is reasonably required by Cotton for completion of the Work.

**Section 4.3** Removal of Contents. The Owner authorizes Cotton to remove contents and non-fixture parts of the building as necessary in accordance with the scope of work.

**Section 4.4** Subcontractors Allowed. As Cotton is an independent general contractor, Cotton has exclusive authority to sub-contract and to utilize other contractors, as it deems necessary for completion of the Work. The Owner is hereby obligated to allow Cotton to sub-contract and to utilize other contractors, as it deems necessary for completion of the Work.

**Section 4.5** Insurance: Cotton shall provide to the Owner certificate(s) of insurance upon request.

**Section 4.6** Permits. Any federal, state or local permits or consents required for the performance of the Work are the responsibility of the Owner (notwithstanding Cotton assistance of Owner in obtaining same) and Owner shall bear all costs related to same.

**Section 4.7** Hazardous Materials. Disposal of any Hazardous Materials (including specimens or samples) or any property that contains Hazardous Materials performed as a part of the Work will be made in the name of the Owner and under any applicable generator number or other identification assigned by the Owner or the applicable governmental authority.

ARTICLE V.
TIME FOR PERFORMANCE OF WORK; GENERAL RELEASE

**Section 5.1** Work Performed. The Work shall be commenced within forty-eight (48) hours (or as reasonably practical given the specifications of the Work) following execution of this Agreement, and Cotton shall use reasonable efforts to substantially or fully complete the Work within a reasonable amount of time after beginning the Work. Should Cotton be delayed, hindered, hindered with or impeded by any act or omission of the Owner, or by any cause beyond Cotton's control, and if a cause of the delay, hindrance, interference or impediment is not due to any act or omission of Cotton, then Cotton shall be entitled to a reasonable extension of time for completion of the Work.

**Section 5.2** Release. OWNER HEREBY RELEASES AND AGREES TO HOLD HARMLESS COTTON, ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, AND AGENTS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, DAMAGES, CAUSES OF ACTION, SUITS, JUDGMENTS, AWARDS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND LIABILITIES OF EVERY KIND OR CHARACTER (COLLECTIVELY REFERRED TO AS "DAMAGES"), IN RESPECT TO PERSONAL OR BODILY INJURY TO, SICKNESS, DISEASE, DEATH OR OTHER DAMAGES SUFFERED OR INCURRED BY OWNER AND/OR THE OWNER'S EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS OR AGENTS OR THOSE OF ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES RESULTING OR ARISING FROM OR ARISING OUT OF OR IN CONNECTION WITH THE WORK DONE BY COTTON, UNLESS THE DAMAGES RESULT FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF COTTON. IT IS THE INTENT OF BOTH COTTON AND OWNER THAT THE FOREGOING INDEMNITY PROVISIONS WILL OPERATE WITHOUT REGARD TO ANY LEGAL THEORY OF NEGLIGENCE OR FAULT, INCLUDING BUT NOT LIMITED TO JOINT AND/OR CONCURRENT NEGLIGENCE OF THE INDEMNITEE.

**Section 5.3** No Consequential Damages. Owner agrees that under no circumstance shall Cotton be liable to the Owner for incidental, consequential or special damages including but not limited to lost revenue, lost profits, lost business, business interruptions, lost business opportunities or any other special, punitive, exemplary or consequential damages.

ARTICLE VI.
TERMINATION

**Section 6.1** Termination By Cotton. Cotton has the right to terminate the Agreement at any time and to be paid the reasonable value of the Work thus far performed.

**Section 6.2** Termination By Owner. In the event the Owner terminates the Agreement, the Owner shall be legally responsible to pay Cotton the for all Charges up to and including the date of such termination, regardless of whether Owner has received a invoice for such Charges prior to such termination.

ARTICLE VII
DISPUTE RESOLUTION

**Section 7.1** Non-binding Mediation. Any controversy, dispute or claim arising out of this Agreement or the Work done hereunder (which can not be amicably resolved by senior management representatives of Cotton and the Owner), shall first be submitted to non-binding mediation. Both parties shall share equally in the expense of such mediation in which a non-interested mediator shall serve to facilitate the resolution of the dispute. If such controversy, dispute or claim can not be settled or resolved by non-binding mediation, either party may then submit such dispute for resolution by binding arbitration in accordance with the terms of this Article VII, provided, however, that in circumstances where equitable (non-monetary) relief is sought, such dispute may be submitted to a court of competent jurisdiction sitting in equity who may issue injunctive relief or other equitable remedy.

**Section 7.2** Attorneys' Fees and Costs. If any legal action or other legal proceeding relating to the enforcement of any provision of this Agreement is brought against either party, including arbitration, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party may be entitled).

ARTICLE VIII.
GOVERNING LAW; VENUE

**Section 8.1** Jurisdiction. This Agreement shall be construed in accordance with the laws of the State of Texas, without giving effect to conflict of laws.

**Section 8.2** Venue. In any legal action relating to this Agreement, the Owner agrees (a) to the exercise of jurisdiction over it by a state or federal court in the County in which the work is performed; provided, however, that the requirement to arbitrate all controversies, disputes and claims arising under this Agreement shall supercede the provisions of this paragraph.

COTTON:

By: _____
Name: Bud Lineman
Title: Regional Director
Date Signed: 5/25/07

OWNER:

By: _____
Name: Cyn Neal
Title: CEO
Date Signed: 5/30/07

Commercial Construction Contract (Rev. 6-2005)

2

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Cotton USA, L.P. | Greater Southeast Community Hospital Corporation I |

| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Harris County, TX__ <br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __District of Columbia__ <br>(IN U.S. PLAINTIFF CASES ONLY) <br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Harry Levy <br>Shumaker Williams, P.C. <br>40 West Chesapeake Avenue <br>Suite 605 <br>Towson, Maryland  21204 | |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ◯ 1 U.S. Government Plaintiff
- ◯ 3 Federal Question (U.S. Government Not a Party)
- ◯ 2 U.S. Government Defendant
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◯ 1 | ◯ 1 | Incorporated or Principal Place of Business in This State | ◯ 4 | ◉ 4 |
| Citizen of Another State | ◯ 2 | ◯ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ◯ 5 |
| Citizen or Subject of a Foreign Country | ◯ 3 | ◯ 3 | Foreign Nation | ◯ 6 | ◯ 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ◯ **A.** *Antitrust* | ◯ **B.** *Personal Injury/ Malpractice* | ◯ **C.** *Administrative Agency Review* | ◯ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane <br>☐ 315 Airplane Product Liability <br>☐ 320 Assault, Libel & Slander <br>☐ 330 Federal Employers Liability <br>☐ 340 Marine <br>☐ 345 Marine Product Liability <br>☐ 350 Motor Vehicle <br>☐ 355 Motor Vehicle Product Liability <br>☐ 360 Other Personal Injury <br>☐ 362 Medical Malpractice <br>☐ 365 Product Liability <br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act <br><br>**Social Security:** <br>☐ 861 HIA ((1395ff) <br>☐ 862 Black Lung (923) <br>☐ 863 DIWC/DIWW (405(g) <br>☐ 864 SSID Title XVI <br>☐ 865 RSI (405(g) <br>**Other Statutes** <br>☐ 891 Agricultural Acts <br>☐ 892 Economic Stabilization Act <br>☐ 893 Environmental Matters <br>☐ 894 Energy Allocation Act <br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. <br><br>*(If Antitrust, then A governs)* |

| ◉ **E.** *General Civil (Other)* | **OR** | ◯ **F.** *Pro Se General Civil* |
|---|---|---|

| **Real Property** <br>☐210 Land Condemnation <br>☐220 Foreclosure <br>☐230 Rent, Lease & Ejectment <br>☐240 Torts to Land <br>☐245 Tort Product Liability <br>☐290 All Other Real Property <br><br>**Personal Property** <br>☐370 Other Fraud <br>☐371 Truth in Lending <br>☐380 Other Personal Property Damage <br>☐385 Property Damage Product Liability | **Bankruptcy** <br>☐ 422 Appeal 28 USC 158 <br>☐ 423 Withdrawal 28 USC 157 <br><br>**Prisoner Petitions** <br>☐ 535 Death Penalty <br>☐ 540 Mandamus & Other <br>☐ 550 Civil Rights <br>☐ 555 Prison Condition <br><br>**Property Rights** <br>☐ 820 Copyrights <br>☐ 830 Patent <br>☐ 840 Trademark <br><br>**Federal Tax Suits** <br>☐ 870 Taxes (US plaintiff or defendant <br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty** <br>☐ 610 Agriculture <br>☐ 620 Other Food &Drug <br>☐ 625 Drug Related Seizure of Property 21 USC 881 <br>☐ 630 Liquor Laws <br>☐ 640 RR & Truck <br>☐ 650 Airline Regs <br>☐ 660 Occupational Safety/Health <br>☐ 690 Other <br><br>**Other Statutes** <br>☐ 400 State Reapportionment <br>☐ 430 Banks & Banking <br>☐ 450 Commerce/ICC Rates/etc. <br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations <br>☐ 480 Consumer Credit <br>☐ 490 Cable/Satellite TV <br>☐ 810 Selective Service <br>☐ 850 Securities/Commodities/ Exchange <br>☐ 875 Customer Challenge 12 USC 3410 <br>☐ 900 Appeal of fee determination under equal access to Justice <br>☐ 950 Constitutionality of State Statutes <br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

28 U.S.C. 1332 -- Services performed pursuant to Contract.  Defendant has failed to pay the entire amount due Plaintiff under that Contract.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 196,303.98 plus late fees, interest and... ☒ | Check YES only if demanded in complaint |
|---|---|---|---|
| | | JURY DEMAND: | YES ☐   NO ☒ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  December 21, 2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  Listed below are tips for completing the civil cover sheet.  These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.